UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ABC Industrial Laundry,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>Allianz Global Corporate & Specialty, *et al.*,<br><br>　　　　　Defendants | Case No. 2:21-cv-01029-CDS-VCF<br><br>**Order Granting Defendants' Motion to Dismiss**<br><br>[ECF No. 41] |

　　　This contractual dispute between plaintiff ABC Industrial Laundry (d/b/a Universal Laundry Supply) and its insurer, defendant Allianz Global Risks US Insurance Company (Allianz), requires me to determine whether a plaintiff may sue to recover purely financial losses resulting from the COVID-19 pandemic under a commercial property insurance policy that requires policyholders to demonstrate direct physical loss or damage. Following the unanimous trend of courts in this district, I find that a plaintiff may not. Two defendants—Allianz and American Insurance Company (American)—move to dismiss ABC's complaint. Because ABC fails to plausibly plead any other basis for coverage under the policy, I grant the defendants' motion to dismiss. But I do so without prejudice and grant ABC leave to amend its complaint if it chooses to do so.

I.　　　Relevant background information[1]

　　　ABC is a Nevada company that provides exclusive laundry service to the Wynn and Encore hotels on the Las Vegas Strip. Compl., ECF No. 1-2 at 7. It purchased a portfolio

---

[1] For the purposes of ruling on the motion to dismiss, I "assume [the] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). My factual summary thus takes ABC's well-pled factual allegations as true.

insurance policy from the defendant insurance companies[2], which was effective in March 2020; ABC paid its premiums on time. *Id.* at 5; *see also* Policy, Ex. 1, ECF No. 41-1 at 9 (listing the policy period as covering times between July 1, 2019, and July 1, 2020). Among other things, the policy provided ABC with property coverage, general liability coverage, and business auto coverage. Resp. Mot. Dismiss., ECF No. 42 at 5. Relevant subparts of the property coverage include coverage for "direct physical loss of or damage to" covered property resulting from a covered cause of loss. *Id.* at 5–6. The term "direct physical loss of or damage to" is not defined by the policy. *Id.* at 6.

      ABC alleges that the presence of COVID-19, manifested via physical droplets existing "in the air and on surfaces within" the hotels, changed and altered those surfaces and resulted in physical damage. ECF No. 1-2 at 7. As a result of the presence of COVID-19 and the subsequent stay-at-home orders issued by then-Nevada Governor Steve Sisolak, ABC claims that it suffered direct financial losses that should have triggered coverage under the policy. *Id.* at 7–10. In March 2020, ABC brought claims under the policy, and in April 2020, the defendants denied those claims. *Id.* at 10–11. ABC then brought a suit in the Eighth Judicial District Court for defendants' alleged breaches of the insurance contract and the covenant of good faith and fair dealing, in addition to violations of the Nevada Unfair Claims Practices Act. *See generally id.* ABC requests declaratory judgment, monetary relief, and punitive damages. *Id.* at 20–21. The defendants removed the suit to this court, where they now move for the dismissal of ABC's complaint. Removal Pet., ECF No. 1; Mot. Dismiss, ECF No. 41.

---

[2] Defendants state that plaintiff erroneously sued Allianz Global Corporate & Specialty, which "is the trade name of [d]efendant Allianz Global Risks US Insurance Company and is not a legal entity." Removal Pet., ECF No. 1 at 2. Plaintiffs do not dispute this assertion, and even further, seem to agree that their claims against the Allianz defendants are misplaced. I address the Allianz defendants further *infra* section III.

II.   **Legal standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, the court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the non-movant. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Finally, dismissal can be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

III.   **Discussion**[3]

As an initial matter, I note that ABC has agreed to "voluntarily abandon [its] claims against Allianz Global Risks US Insurance Company" because Allianz was incorrectly named in this suit. ECF No. 42 at 12. No party disputes that Allianz Global Corporate & Specialty is the same entity as Allianz Global Risks US Insurance Company. ECF No. 1 at 2. I thus dismiss

---

[3] In issuing this order, I considered both the insurance policy between ABC and the defendants (ECF No. 41-1), and the stay-at-home orders issued by then-Governor Sisolak (ECF Nos. 41-2, 41-3, 41-4, 41-5). In adjudicating a Rule 12(b)(6) motion, a court generally considers only the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007). But the court may also consider documents that the complaint incorporates by reference if the plaintiff refers "extensively to the document or the document forms the basis" of the plaintiff's claims. *Id.* Here, defendants provided the insurance policy at issue as well as the stay-at-home orders referenced extensively in ABC's complaint. ABC does not dispute the authenticity of these exhibits, so I consider them at this stage of the litigation.

ABC's claims against both Allianz defendants with prejudice and turn the discussion to its breach-of-contract claims against American before addressing the other claims.

      a.  *ABC's first three breach-of-contract claims fail to allege direct physical loss or damage.*

"The starting point for the interpretation of any contract, including insurance policies, is with its plain language." *McDaniel v. Sierra Health & Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002). An insurance policy's terms are to be viewed "in their plain, ordinary[,] and popular sense." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993). A potential for coverage under the policy "only exists when there is arguable or possible coverage." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). Interpreting insurance contract terms in Nevada is normally a job for the court. *See Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

ABC's insurance policy with American is limited by various coverage provisions requiring the policyholder to demonstrate "direct physical loss or damage." I list them each briefly here: the "extra expense" provision relied upon in ABC's first cause of action states, "[e]xtra [e]xpense means necessary expenses you incur during the period of restoration that you would not have incurred if there *had been no direct physical loss or damage to property caused by or resulting from a [c]overed [c]ause of [l]oss*." ECF No. 41-1 at 61 (emphasis added). The "civil authority" provision relied upon in ABC's second cause of action states, "[w]e will pay for the actual loss of [b]usiness [i]ncome you sustain and necessary [e]xtra [e]xpense caused by action of civil authority that prohibits access to the described premises *due to direct physical loss of or damage to property*, other than the described premises, *caused by or resulting from any [c]overed [c]ause of [l]oss*." *Id.* at 62 (emphasis added). The "dependent property coverage" relied upon in ABC's third cause of action states that for the policy would cover the loss of business income sustained due to the necessary suspension of operations caused by the "direct physical loss or damage by a [c]overed [c]ause of [l]oss to a dependent property." *Id.* at 98.

Essentially, the policy provisions invoked by ABC's first three causes of action obligate American to pay for ABC's actual losses of business earnings and extra expenses if, among other

prerequisites to coverage, ABC can demonstrate that its losses were caused by "direct physical loss of or damage to property." ECF No. 41 at 10. But "[a] party who seeks to recover on an insurance policy has the burden of establishing any condition precedent to coverage." *Lucini-Parish Ins. v. Buck, Inc.*, 836 P.2d 627, 629 (Nev. 1992).

Other courts in this district have held that "policy language requiring 'direct physical loss' excludes coverage for claims that contain no plausible allegations of demonstrable, physical alteration, or change to the condition of a property." *Arminas Wagner Enters., Inc. v. Ohio Sec. Ins. Co.*, 2023 WL 2072499, at *4 (D. Nev. Feb. 17, 2023) (Mahan, J.); *see also Levy Ad Grp., Inc. v. Chubb Corp.*, 519 F. Supp. 3d 832, 836–37 (D. Nev. 2021) (Dorsey, J.) (concluding that a policy did not cover economic losses incurred during COVID-19 closures because the policy required physical losses or damage to premises); *WP6 Rest. Mgmt. Grp. LLC v. Zurich Am. Ins. Co.*, 595 F. Supp. 3d 973, 979 (D. Nev. 2022) (Dawson, J.) (holding that direct physical loss requires physical alteration of the property). The Ninth Circuit, albeit applying California law, has found that the phrase "direct physical loss of or damage to" property requires physical alteration of the property. *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 15 F.4th 885, 892 (9th Cir. 2021). And while the Supreme Court of Nevada has not issued a ruling directly addressing this topic, "[i]n the context of interpreting insurance policy terms, [it] has often looked to persuasive precedent from other jurisdictions, especially California." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1123, 1235 (D. Nev. 2010). I too find "no doubt that the Nevada Supreme Court would come to the same conclusion as the Ninth Circuit Court of Appeals, the District of Nevada[,] and California District Courts." *WP6*, 595 F. Supp. 3d at 980 (citations omitted). I thus find that the policy language requiring "direct physical loss" excludes coverage for claims that contain no plausible allegations of physical alteration to the property in question.

ABC cannot plausibly allege that its property was physically altered such that it implicated a "direct physical loss of or damage to property," and thus it cannot establish that American breached its obligations under the policy. ABC argues that this case can be

distinguished from other cases alleging direct physical loss because the presence of COVID-19 "droplets" on the surface of substances on the property constituted a physical alteration. I do not find that unsupported assertion persuasive. *See WP6*, 595 F.3d at 980 (conclusory allegations that the presence of COVID-19 particles rendered items of physical property unsafe failed to demonstrate physical alteration to insured property). ABC also argues that to kill the virus, it was required to "install UV lights in [its] transport trailers, build cart washers, etc." ECF No. 42 at 13. It also erected physical dividers to separate employees, installed solar panels, and re-cleaned linens that were delivered to hotels prior to the widespread onset of the virus. *Id.* at 10. However, even construing those allegations generously, no action undertaken by ABC alleges an alteration to ABC's property constituting direct physical loss of or damage to property. *See, e.g., Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 1066, 1069 (N.D. Ill. 2021), *aff'd* 20 F.4th 303 (7th Cir. 2021) (rejecting the argument that remedial measures like the installation of plexiglass or special air filters demonstrate that COVID-19's presence altered the physical space of the property). The only physical alteration of ABC's property came from ABC's response to the virus, not the virus itself. Stated otherwise, it was a modification of the property due to ABC's own actions and decisions, rather than damage to the property resulting from the presence of COVID-19.

      ABC also asserts that this proposed definition of "direct physical loss" adds "an element of permanency that is not contained within the policy itself." ECF No. 42 at 13. But defining direct physical loss by way of physical alteration does not add any element of permanence that did not already exist under the contract; the definition merely helps to specify what constitutes "physical loss" or "damage." The COVID-19 "droplets" may have lingered temporarily on the surfaces of ABC's property, but ABC has not established that their presence actually damaged the property.

      In sum, I find that ABC has failed to plausibly allege facts demonstrating a physical alteration of its property. Conclusory allegations about COVID-19 droplets on the surfaces of

one's property do not suffice to establish direct physical loss of or damage to property. And remedial measures taken to mitigate the spread of the virus, while themselves alterations to a property, also fail to demonstrate any alteration of the property directly caused by the virus. I thus dismiss ABC's first three causes of action—(1) breach of contract based on business income and extra expense, (2) breach of contract based on business income (civil authority), and (3) breach of contract based on dependent property coverage—with prejudice and without leave to amend, as amendment of these claims would be futile.[4] *See, e.g., Arminas Wagner Enters.*, 2023 WL 2072499, at *7 (dismissing similar claims with prejudice because the plain language of the policy prevented plaintiff from bringing a successful insurance claim); *Levy Ad Grp.*, 519 F. Supp. 3d at 838 (same).

      b.  *ABC's fourth cause of action fails because it has not sufficiently pled a crisis event.*

ABC alleges that American was obligated to cover any actual loss of business income sustained due to a crisis event. ECF No. 1-2 at 16. Under the policy, covered crisis events include acts of violence and premises contamination, the latter of which forms the basis for ABC's claim. ECF No. 41-1 at 109. The policy purports to cover losses resulting from "necessary closures of your covered premises due to any sudden, accidental, and unintentional contamination or impairment of the covered premises or other property on the covered premises which results in clear, identifiable, internal or external visible symptoms of bodily injury, illness, or death of any person(s)." *Id.* "Covered premises" refer to locations occupied by ABC and covered by the policy. *Id.* at 110.

---

[4] The Federal Rules of Civil Procedure state that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit construes this rule broadly, requiring that leave to amend be granted with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted). But leave to amend may be denied if the proposed amendment is futile. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). The insurance policy at issue in this case is immutable. ABC's claims for coverage under the policy rely on an interpretation of "direct physical loss of or damage to property" which I find erroneous as a matter of law. Thus, any amendment to those claims would be futile.

But by the terms of the insurance policy, a covered crisis event requires a contamination or impairment of the covered premises resulting in clear and identifiable symptoms of injury, illness, or death. ABC has not alleged that its laundry location(s) were contaminated by COVID-19 or that any specific contamination on its premises resulted in anyone's injury, illness, or death. ABC asserts that it is entitled to coverage for the expenses occurred as a result of the mere presence of COVID-19 on the premises (ECF No. 1-2 at 17), but without any allegation that COVID-19 resulted in "clear, identifiable . . . symptoms of bodily injury, illness, or death" on its premises, ABC's claims are insufficient to support a claim for breach of the crisis-event provision. ABC vehemently defends that "there is no question [that] plaintiff's businesses were forced to close as a result of COVID-19." ECF No. 42 at 18. However, as American points out, coverage under the crisis-event provision of the policy requires more than simply the closure of ABC's business. ECF No. 43 at 10. The plain language of the contract requires that the closure occurred "due to any . . . contamination or impairment" of the property **and** that the contamination or impairment "result[ed] in . . . symptoms of bodily injury, illness, or death" for coverage to apply. ECF No. 41-1 at 109. ABC may have pled that its property was contaminated due to COVID-19 via droplets on property surfaces, but it has not pled that the contamination of its property resulted in any symptoms of injury, illness, or death. I dismiss ABC's fourth cause of action without prejudice, as I find that amendment may salvage this claim if ABC can truthfully allege that injury, illness, or death occurred.

      c. *ABC's remaining causes of action fail because it has not established coverage under the policy.*

          1. *ABC's fifth and sixth causes of action fail because they depend on contractual liability.*

ABC also alleges that American breached the covenant of good faith and fair dealing and violated Nevada's Unfair Claims Practices Act. ECF No. 1-2 at 16–20. Both causes of action rely on American's supposed contractual obligation to pay ABC, an obligation which I find bereft of factual support. "An insurer breaches the duty of good faith when it refuses 'without proper cause to compensate its insured for a loss covered by the policy.'" *Pioneer Chlor Alkali Co., Inc. v.*

*Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994) (quoting *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). Because I find that ABC has not plausibly alleged that it was entitled to coverage under the policy, American could not have acted in bad faith by denying coverage. I thus dismiss ABC's claim for breach of the covenant of good faith and fair dealing without prejudice. *See, e.g.*, *WP6*, 595 F. Supp. 3d at 982 (a plaintiff who fails to state a claim for coverage under the insurance contract has also failed to state a claim for breach of the covenant of good faith and fair dealing).

Similarly, an insurer cannot be liable for a violation of Nevada's Unfair Claims Practices Act when its interpretation of the insurance contract "was at least nominally reasonable under the circumstances and liability never became reasonably clear." *Hummel v. Cont'l Cas. Ins. Co.*, 254 F. Supp. 2d 1183, 1191 (D. Nev. 2003). I thus dismiss ABC's claim for violations of Nevada's Unfair Claims Practices Act without prejudice as well. *See, e.g.*, *WP6*, 595 F. Supp. 3d at 982 (a plaintiff who fails to state a claim for coverage under the insurance contract has also failed to state a claim for violations of Nevada's Unfair Claims Practices Act).

### 2. *Declaratory relief and punitive damages are inappropriate.*

ABC's complaint includes a standalone section requesting "[d]eclaratory [j]udgment." ECF No. 2-1 at 11–12. Because I dismissed ABC's substantive claims, I cannot find that it is entitled to declaratory judgment stating that it suffered a direct physical loss to its covered premises or that it deserves coverage under the policy. I thus dismiss ABC's request for declaratory relief without prejudice.

ABC's complaint also contains a standalone request for punitive damages. *Id.* at 20–21. Nevada law allows a plaintiff to recover punitive damages against an insurer for a bad-faith refusal to pay an insurance claim if "he establishes that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Desert Palace, Inc. v. Ace Am. Ins. Co.*, 2011 WL 810235, at *4 (D. Nev. Mar. 2, 2011). However, "punitive damages are only available when 'it is proven by

clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, express or implied.'" *Id.* (quoting NRS § 42.005). American argues that ABC has failed to plead facts capable of establishing oppression, fraud, or malice. ECF No. 41 at 20 n.6. ABC does not substantively address this argument. *See* ECF No. 42 at 19 (conclusory response). I find that ABC has, indeed, failed to establish that American knew of or recklessly disregarded any reasonable basis for disputing coverage. Furthermore, ABC has not actually pled anything which might allow for an inference of oppression, fraud, or malice; its request for punitive damages simply concludes that American acted recklessly. ECF No. 1-2 at 20–21. This is insufficient. I thus dismiss ABC's request for punitive damages without prejudice.

## IV.    Conclusion

IT IS HEREBY ORDERED that defendants' motion to dismiss **[ECF No. 41] is GRANTED**. I dismiss plaintiff's first three causes of action with prejudice. If ABC chooses to file an amended complaint, it must do so within 30 days of this order. Failure to do so could result in the closing of this case.

DATED: March 16, 2023

_____
Cristina D. Silva
United States District Judge